UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| HAROLD WYMS, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) STAFFING SOLUTIONS SOUTHEAST, ) INC. d/b/a PROLOGISTIX, ) ) Defendant. ) | Case No. 3:15-cv-643-MJR-PMF |

**UNOPPOSED MOTION FOR APPROVAL OF CLASS ACTION
SETTLEMENT, INCLUDING RELEASE OF NAMED PLAINTIFF'S
FLSA CLAIM, AND MEMORANDUM IN SUPPORT**

Named Plaintiff Wyms hereby moves this Court for an Order granting final approval of the Parties' Rule 23 class action settlement, which includes a release of his Fair Labor Standards Act ("FLSA") claim. A copy of the Parties' revised Confidential Settlement and Release Agreement ("Revised Settlement Agreement"), was submitted to the Court prior to preliminary approval.

Plaintiff incorporates by reference the accompanying Memorandum in Support.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and issue an Order:

(a) finding that the Revised Settlement Agreement appears to be fair, reasonable, and adequate as to members of the Rule 23 Class;

(b) granting final approval of the Rule 23 class action settlement;

(c) approving the release of the Named Plaintiff's FLSA claim;

(d) dismissing the settled claims with prejudice; and

(e) granting such further relief as the Court deems equitable and just.

## MEMORANDUM IN SUPPORT

The Parties agreed upon a settlement on behalf of the 855 putative Class Members in this action pled as an FLSA collective action and Rule 23 class action. The Parties and their counsel assert that the settlement meets the standards for granting final approval of a class settlement under Rule 23 and approving an individual settlement under the FLSA for the Named Plaintiff. Plaintiff respectfully requests that the Court grant his motion and dismiss the settled claims with prejudice.

### Facts and Procedural History

Defendant Staffing Solutions Southeast, Inc. d/b/a ProLogistix ("ProLogistix") supplies temporary employees to operate forklifts at a large warehousing and distribution facility located in Edwardsville, Illinois. Named Plaintiff Harold Wyms and the proposed Class are current and former forklift operators employed by ProLogistix and assigned to work at that facility during the class period.

On June 9, 2015, Plaintiff Wyms filed a Class Action and Collective Action Complaint against ProLogistix on behalf of himself and others similarly situated alleging that ProLogistix violated the FLSA and Illinois law by failing to pay its forklift operators for

all regular and overtime hours worked. Doc. 1. Specifically, Plaintiff alleged that ProLogistix, pursuant to its policy and practice, failed to pay the Class for pre-shift time spent locating forklifts, performing mandatory pre-shift forklift inspections, completing inspection documents, changing forklift batteries, obtaining supplies, and driving their forklifts to daily meetings. Doc. 1, at 1 & 10-19.

Early in the case, the Parties agreed to explore settlement on behalf of the putative Class. After both parties exchanged initial disclosures and Plaintiff served written discovery requests, the Parties agreed to stay discovery pending disclosures of specified data needed to calculate the value of the claims, and the outcome of subsequent settlement efforts.

In furtherance of the settlement discussions, ProLogistix produced payroll and employment data for the 855 forklift operators it employed in Edwardsville, Illinois during the relevant time. Plaintiff converted that data into a detailed spreadsheet to calculate damages.

The parties attempted to directly negotiate a class-wide settlement. After reaching an impasse, they jointly requested mediation with Magistrate Judge Philip M. Frazier.

Prior to mediation, Plaintiff's counsel calculated a maximum of $189,814.97 in potential damages accruing to the putative Class, including full liquidated damages under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and all penalties and interest available under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/12(a). Ex. 1,

3

Declaration of Mark Potashnick (hereinafter "Potashnick Decl.", at ¶ 11). This calculation was based on an average of 15 unpaid minutes of work per shift during a three-year recovery period. 29 U.S.C. § 255(a) (three years SOL for willful FLSA claim); 820 ILCS § 105/12(a) (3-year SOL for ILCS claims). *Id*. Defendant disputed any unpaid time, the reasonableness of Plaintiff's estimate of 15 unpaid minutes per shift, and willfulness. *Id.*

At the end of the parties' mediation conference on March 17, 2016 with Magistrate Judge Frazier in Benton, Illinois, the parties reached an agreement on the terms of a settlement. The Parties agreed to compromise and settle all claims that were or could have been asserted in the case arising out of the facts pled against ProLogistix on behalf of the entire proposed Class.

The attorneys who negotiated on behalf of the Parties are experienced wage and hour litigators and vigorously represented their clients' respective interests. Defense counsel are experienced class action litigators, and vigorously represented their clients' interests. Settlement was reached only after lengthy arm's-length negotiations with the assistance of Magistrate Judge Frazier. Potashnick Decl., at ¶¶ 12-18, Ex. 4, Declaration of Gerald L. Maatman, Jr. (hereinafter "Maatman Decl."), at ¶¶ 2, 4 & 5.

In the opinion of Plaintiff's counsel, the settlement reached in this case constitutes a reasonable compromise of a *bona fide* dispute involving various vigorously contested legal and factual issues. Potashnick Decl. ¶¶ 10-11. Significantly, Class Counsel have settled similar claims on behalf of forklift operators working at the same Edwardsville

4

facility. Both of those settlements were previously approved by this District, and all three settlements are comparable on a workweek-for-workweek basis. *Id.* at ¶18. Defense counsel is of the same opinion.

## Summary of the Proposed Settlement

The Parties have executed a Revised Settlement Agreement, which they previously submitted to the Court. The critical terms of the Revised Settlement Agreement are summarized below. In sum, the Parties have agreed to settle the Class Members' Illinois wage and hour claims through a Settlement Fund created by ProLogistix in the amount of $100,000.00 inclusive of attorneys' fees and costs, a Service Award, payroll taxes on a portion of the award allocated to wage recovery, and any administrative costs associated with the settlement. The Revised Settlement Agreement expressly provides that, other than the Named Plaintiff, none of the Class Members waive any rights under the FLSA. The Settlement Fund will be distributed to Class Members based on an equitable formula based primarily on (1) eligible weeks worked during the applicable class period and (2) wage rates earned during the applicable class period.

Based on his service to the Class in obtaining qualified counsel, initiating this case, informing his co-workers of their right to opt-in to this case, substantially assisting counsel to investigate and prosecute this case, and attending the mediation in person in Benton, Illinois on behalf of the entire Class, and in consideration for his general release

of claims, Named Plaintiff Wyms seeks a modest $2,000.00 Service Award. Agreement, ¶ 2; Potashnick Decl., ¶ 9.

Dividing the total settlement funds available for distribution by the total number of Class Members shows that the average recovery will be nearly $72.00 per Class Member, with some receiving less and others receiving much more depending on their respective lengths of employment and wage rates. Potashnick Decl., ¶ 20. While many Class Members would have likely sought more than this amount at trial, Class Counsel believe this is a fair recovery in exchange for the certainty of recovery and the benefit of receiving monies now as opposed to years from now, or not at all. Potashnick Decl., ¶ 16.

Except for the Named Plaintiff, who seeks a Service Award and is executing a general release, the Class Members' release is limited to the state-law wage and hour claims at issue in the lawsuit, and does not release any other claims that Class Members may have. Agreement, ¶ 22. Each Class member will receive a monetary recovery of at least $5.00. (*Id.* at ¶ 5).

Plaintiff's counsel seek, along with final approval of the Rule 23 settlement, approval of attorneys' fees in the amount of 33 1/3% of the Settlement Fund, plus their out-of-pocket expenses. ProLogistix does not oppose or object to this request for attorneys' fees and costs. Settlement Agreement, ¶ 4. In addition, the Parties agree that the total value of this Settlement and the specific amounts allocated to each Class Member should be kept confidential. *Id.* at ¶ 26.

### The Notice Process

Plaintiff's Counsel previously mailed a notice of settlement in the form and format approved by this Court to all 855 Class Members. Doc. 54. Class Counsel searched for updated addresses for any returned notices, then re-mailed all such notices. After a full and fair opportunity to object or opt-out of the settlement or its terms, no class member has objected and only one class member has opted-out of the settlement.

### Argument and Authorities

**I. Applicable Standards for Approval of the Rule 23 Class Settlement and Release of the Named Plaintiff's FLSA Claim**

The standard for approving a class settlement under Rule 23 and a settlement under the FLSA is similar: the settlement must be "fair, reasonable, and adequate." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C)); *Raymer v. Mollenhauer*, 2011 U.S. Dist. LEXIS 10128, *4-5 (N.D. Ind. Jan. 31).

Approval of a Rule 23 class settlement involves a two-step process. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). First, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *See Manual for Complex Litigation*, § 21.633. Thereafter, the Court makes a final

determination of the settlement's fairness. A proposed class action settlement may be approved if the Court, after allowing absent class members the opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This litigation has now reached the final approval stage.

This District favors settlements of class action litigation. *Mangone v. First USA Bank*, 206 F.R.D. 222, 224 (S.D. Ill. 2001). The decision of whether to approve the Parties' proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985). The Seventh Circuit has set forth a list of non-exclusive factors that a district court should balance in deciding whether to grant final approval, namely:

   a. The strength of plaintiffs' case versus the amount of the settlement offer;

   b. Whether there was fraud or collusion in the settlement;

   c. The complexity, duration and expense of the litigation;

   d. The state of the proceedings and the amount of discovery undertaken in the case; and

   e. The opinions of the participating, including class counsel, class representative, and absent class members.

*Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). The Court considers these factors in their entirety while evaluating the fairness of the settlement. *Armstrong v. Board*

*of Directors of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980). This Court has noted:

> A settlement is a compromise and will not be considered a total win for either side. The Court does not decide whether the settlement reached between the parties is the best deal or whether the class would have received the same benefit from the settlement as they would have recovered from a trial at which they were victorious. The Court's responsibility is to determine whether the proposed settlement is fair, reasonable and adequate.

*Meyenburg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 97057, *10 (S.D. Ill. June 5) (internal citations omitted).

## 2006 U.S. DIST. LEXIS 97057

### III. Analysis of the Applicable Factors Favors the Settlement

#### A. Strength of Plaintiff's Case, Balanced Against Amount Offered

This settlement was reached despite the natural disagreement between the Parties about the merits of Plaintiff's case. Despite the early resolution, the Parties thoroughly calculated possible damages, assessed the best- and worst-case scenarios, and weighed the likelihood of various potential outcomes. They did so with guidance from Magistrate Judge Frazier. Significantly, ProLogistix disclosed data showing limited work weeks by most of the Class Members. Through investigation, Plaintiff's counsel verified that such limited workweeks typically occurred because most of Defendant's employees were

quickly hired directly by the operator of the Edwardsville facility.[1] Plaintiff was preparing to file for both FLSA collective action and Rule 23 class action status. Plaintiff considered that ProLogistix would undoubtedly present witnesses to rebut testimony and evidence from Plaintiff and other opt-in Plaintiffs that they worked off-the-clock. Notably, ProLogistix denied that it had a uniform time rounding policy or practice during the recovery period. Both sides would have likely hired experts to quantify damages, and possibly to determine the net impact of any alleged time rounding system. The settlement is the product of vigorous negotiation, first directly by the Parties resulting in an impasse, and then with the mediator, Magistrate Judge Frazier. Potashnick Decl. ¶ 14; Maatman Dec., at ¶ 4.

Through informal discovery and detailed discussions between counsel, the Parties gained an understanding of the nature of Plaintiff's claims and ProLogistix's defenses. Despite the limited amount of discovery in this case, Plaintiff's counsel possesses thorough knowledge into the background and inner workings of the Edwardsville facility because they previously litigated two separate lawsuits against UTi Integrated Logistics, which managed this same warehouse and shipping facility, and Schenker, who was later granted the contract to manage it. Through investigation and discussions with opt-ins and others, Plaintiff's counsel learned that ProLogistix's forklift operators

---

[1] Many of those forklift operators had already recovered for alleged unpaid work performed during most of their workweeks at the Edwardsville facility through a prior suit litigated by Plaintiff's counsel against the operator of that facility.

continued to be harmed by the same policies and procedures at issue in the prior cases against UTi and Schenker, including the same "ready to work" and pre-shift inspection policies. Potashnick Decl. ¶ 15. During settlement negotiations, counsel for the Parties analyzed ProLogistix's payroll and employment data. The Parties thus possessed, and analyzed, ample information to make an informed assessment of the merits of their respective positions and the likely range of damage awards. The settlement amount proved to be greater than ProLogistix's damage calculation and lower than Plaintiff's calculation. *Id.* at ¶ 11. This is a classic compromise.

Further, the compensation this settlement makes available to Class Members is favorable and provides reasonable consideration for their claims. The maximum value of the claims calculated by Plaintiffs' counsel prior to mediation, based on extensive disclosures by Defendant, was $189,814.97.  The claims settled for $100,000.00, which equates to a settlement of more than half of the maximum possible value.  Again, this is a classic compromise, which is fair and reasonable to the entire Class.

The settlement brings Class Members meaningful monetary value *now*, not years from now, and provides certainty about the outcome. "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

**B.  The Likely Complexity, Length, and Expense of Continued Litigation**

This case is complex and carries risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The key issues in the case include whether ProLogistix's forklift operators performed work off-the-clock and whether ProLogistix maintained a time clock rounding system which denied them compensation they would have been owed. 29 C.F.R. § 785.48(b) (providing that time rounding is unlawful if it "result[s], over a period of time, in failure to compensate the employees properly for all the time they have actually worked"). Throughout discovery and at trial, each side would present representative testimony from forklift drivers and management regarding arrival times and activities of the forklift operators, work requirements, timekeeping practices, rounding practices, and the effects of rounding on recorded time. The Parties would each likely present expert class-wide damage calculations, as well as lengthy and expensive expert statistical analysis to demonstrate the result of ProLogistix's time rounding policies. An appeal of the Court's judgment would be likely. In sum, the remaining litigation would be lengthy, time-consuming and expensive. Potashnick Decl., ¶ 16.

**C. The Amount of Opposition to the Settlement**

After dissemination of the notice of settlement previously approved by this Court, no Class Member has submitted any objection to any of the settlement terms. Only one of 855 Class Members opted-out of the settlement. Potashnick Decl., ¶ 21. These results clearly show that the Class is pleased with the Parties' settlement.

### D. Opinion of Counsel

The Court is "entitled to rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Based on their knowledge of this case and two related cases, as well as their extensive experience in similar FLSA actions, Plaintiff's counsel believe that the settlement is fair, reasonable, and adequate. *Id.* at ¶ 10. It provides substantial benefits to the Class, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. *Id.* at ¶ 10 & 16. Defense counsel agrees. Maatman Decl. , at ¶¶ 6-7.

### E. Stage of the Proceeding and Amount of Discovery Completed

As discussed above, this case was in the preliminary stages of discovery. The Parties, with an eye towards settlement and limiting litigation costs, conducted informal, but thorough, discovery to value the claims as quickly as possible in the hopes of reaching resolution. *Id.* at ¶ 15.

### F. Summary of Factors

The Parties, armed with substantial background knowledge and experience litigating off-the-clock claims, including in the same Edwardsville facility, have analyzed the data and interviewed numerous witnesses. Through this investigation, Plaintiff gained evidence verifying the facility-wide scope of the violations. Both sides ardently support and believe in their positions. However, a compromise early in the litigation, as opposed to one extended over years with substantial costs and expenses, is beneficial to the Class.

Based on all these factors, the Court should find that the proposed settlement is a fair and adequate resolution of Plaintiff's claims. Accordingly, Plaintiff requests that the Court grant final approval of the Rule 23 settlement, as well as settlement of the Named Plaintiff's individual FLSA claim.

### IV. Named Plaintiff Wyms Deserves a Service Award

"Incentive awards for class representatives are common." *Hawkins v. Securitas Sec. Servs. USA*, 280 F.R.D. 388, 395 (N.D. Ill. 2011) (citing *Karraker v. Rent-a-Center, Inc.*, 492 F.3d 896, 899 (7th Cir. 2007)). Such awards provide compensation to the class representative for time spent participating in the prosecution of the case above and beyond that of the absent class members and for subjecting himself to the "slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry." *Id.* (citing *In re Cont'l. Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). Service awards are routinely granted to plaintiffs who expend efforts and take a leadership role in the litigation. *See, e.g., Butler v. Am. Cable & Tele., LLC*, 2011 U.S. Dist. LEXIS 115506, *38 (N.D. Ill. Oct. 6); *Lively v. Dynegy, Inc.*, 2008 U.S. Dist. LEXIS 75774, *6 (S.D. Ill. Sept. 30) (awarding $10,000 to each of three plaintiffs); *Morlan v. Univ. Guar. Life Ins.*, 2003 U.S. Dist. LEXIS 20961, *9 (S.D. Ill. Nov. 20) (awarding service awards ranging from $5,000 to $25,000); *In re Ready-Mixed Concrete Antitrust Litig.*, 2009 U.S. Dist. LEXIS 132243, *38-39 (S.D. Ind. Mar. 31) (surveying cases awarding incentives of $3,000 to $25,000 per plaintiff).

Named Plaintiff Wyms, who was responsible for obtaining qualified and experienced counsel, initiating this action, informing opt-in plaintiffs of the existence of this suit and their rights to participate, provided substantial guidance to Plaintiff's counsel in investigating the claims, drafting the Complaint, understanding and compiling underlying facts, and negotiating a fair and reasonable resolution on behalf of the Class. He deserves a $2,000.00 Service Award.

Such an award is clearly justified by Mr. Wyms' efforts. There can be no question that the other Class Members have substantially benefited from his initiative and his actions. Without his efforts, this settlement would not have been achieved. In light of Mr. Wyms' efforts, the requested service award is appropriate.

Notably, much larger service awards have repeatedly been approved within this Circuit. *See, e.g., In Re Ready-Mixed Concrete*, 2010 U.S. Dist. LEXIS 30776, at *35-36 (surveying cases awarding incentives of $3,000 to $25,000 per plaintiff) *Lively*, 2008 U.S. Dist. LEXIS 75774, at *6 (awarding $10,000 to each of three plaintiffs); *Morlan*, 2003 U.S. Dist. LEXIS 20961, at *9-10 (awarding service awards ranging from $5,000 to $25,000).

**V.     Plaintiff's Counsel Are Entitled to Reasonable Fees and Expenses**

An award of attorney fees to class counsel is appropriate under Rule 23(h). "When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis when determining a reasonable fee." *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *7 (S.D. Ill. Jan. 31) (citing *Gaskill v. Gordon*,

160 F.3d 361, 363 (7th Cir. 1998); *Florin v. Nationsbank*, 34 F.3d 560, 566 (7th Cir. 1994)); *Will v. Gen. Dynamics Corp.*, 2010 U.S. Dist. LEXIS 123349, *7 (S.D. Ill. Nov. 22); *see also In re: Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 85003, *16 (S.D. Ind. Aug. 17) ("the 'percentage of the fund' approach to determining reasonable attorneys' fees is favored by the Seventh Circuit and is also the most accurate reflection in this case of the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time").

"When a settlement yields a common fund for class members, fees must be paid from the recovery." *Will*, 2010 U.S. Dist. LEXIS 123349, *5. The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). District courts determine whether the fee requested is within the range of fees that would have been agreed to at the outset of the litigation in an arm's length negotiation in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *Will*, 2010 U.S. Dist. LEXIS 123349, at *6 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). "Thus, in common fund cases, "the measure of what is reasonable as an attorney fee is what an attorney would receive from a paying client in a similar case." *Id.*, at *7 (citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000)). "'It is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer

16

would receive if he were selling his services in the market rather than being paid by court order.'" *Id.* (citing *In re Cont'l. Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)). This Court has recognized that, "[w]here the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, 'the normal rate of compensation in the market' is '33.33% of the common fund recovered.'" *Id.*, at *7-8. Class Counsel seek an award of attorneys' fees in the amount of $33,333.33, which equates to 33 1/3% of the Settlement Fund. The fee requested falls squarely within the range contemplated by this Circuit as thus should be deemed reasonable.[2]

Similarly, the FLSA and Illinois Minimum Wage Law allow for reimbursement of expenses reasonably incurred, and courts within this Circuit have repeatedly allowed those expenses to be paid from the common fund. 29 U.S.C. § 216(b); 820 ILCS 105/12(a); *Beesley*, 2014 U.S. Dist. LEXIS 12037, at *12-13, at *3; *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1233 (N.D. Ill. 1993). Class Counsel seeks reimbursement of their out-of-pocket expenses of $3,266.27, including the anticipated cost of mailing settlement

---

[2] Class Counsel submits a request for fees based on a percentage-of-the-fund methodology. The use of a lodestar cross-check has "fallen into disfavor," *Beesley*, 2014 U.S. Dist. LEXIS 12037, at *10 (citing *In re Synthroid Marketing Litig.*, 325 F.3d at 979-80), but Class Counsel maintained records of their time in this case and the requested fee award amounts to less than a .7 multiplier currently ($33,333.33 fees sought / $48,288.00 lodestar fees), with much work to be done after the Court grants final approval. *See* Paul Decl. at ¶¶6-7; Potashnick Decl. at ¶¶18-19.

17

checks to Class Members. Ex. 2, Paul Decl. at ¶7; Potashnick Decl. at ¶20.

Accordingly, fees should be awarded via a percentage of the fund, as contemplated by the Court-approved Class Notice, the Settlement Agreement, and the above-cited authority. Also, Class Counsel's reasonable expenses sought herein should be paid.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Approval of Class Action Settlement, including Settlement of Named Plaintiff's FLSA Claim, and grant any other relief the Court deems just and proper.

Respectfully submitted,

| **PAUL McINNES LLP** | **WEINHAUS & POTASHNICK** |
|---|---|
| Richard M. Paul III (MO Bar #44233) | /s/ Mark Potashnick |
| (admitted *pro hac vice*) | Mark A. Potashnick (MO Bar # 41315) |
| Jack D. McInnes (MO Bar #56904) | 11500 Olive Blvd., Suite 133 |
| (admitted *pro hac vice*) | St. Louis, Missouri 63141 |
| 601 Walnut Street, Suite 300 | Telephone: (314) 997-9150 |
| Kansas City, Missouri 64106 | Facsimile: (314) 997-9170 |
| Telephone: (816) 984-8100 | markp@wp-attorneys.com |
| Facsimile: (816) 984-8101 | |
| paul@paulmcinnes.com | |
| mcinnes@paulmcinnes.com | |

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via the Court's electronic filing system on March 9, 2017.

/s/ Mark Potashnick